

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

June 14, 1939

GERALD C. MANN
ATTORNEY GENERAL

Honorable John Atchison
County Attorney
Gainesville, Texas

Dear Sir:

Opinion No. O-660
Re: Effect of paying taxes in
Montague County on land
actually located in Cooke
County.

We are in receipt of your letter of May 22, 1939,
wherein you advise us that 110 acres of land out of the
John Moss Survey is located partly in Cooke County and
partly in Montague County. The whole tract of land was
assessed for taxes in Montague County for the years 1925
through 1937, inclusive, and were paid in that county.
You advise that the present owners of said land have re-
quested the Commissioners' Court of Cooke County to can-
cel the taxes duly assessed in that county against the
part of said property located in Cooke County, relying on
Articles 7154 and 7155, Revised Civil Statutes. You fur-
ther advise that as a matter of fact the county line be-
tween Cooke County and Montague County has been well-
established for many years and is shown on the various
maps and plats in Cooke County. However, you do not
definitely say that the county boundary between those
two counties has been accurately and legally surveyed.

You request our opinion in response to the fol-
lowing three questions:

"(1)  Is Cooke County legally obli-
gated to cancel the taxes against said
property in accordance with said Arti-
cles 7154 and 7156?

"(2)  Is Cooke County legally en-
titled to reimbursement from Montague
County for the county taxes collected
by Montague County on that part of said
land located in Cooke County?



"(3) Under the facts above shown could Cooke County collect said county taxes through regular delinquent tax suit against the present owners, despite the fact that the county taxes have been levied by and paid to Montague County on said land located in Cooke County?"

The facts submitted by you are hardly sufficient upon which to predicate an answer to your first two questions, but we are in a position to answer the third. Chapter 10, Title 122, Revised Civil Statutes, relates to delinquent taxes and the collection thereof. Article 7338 found in said Chapter 10, reads as follows:

"Real estate which may have been rendered for taxes and paid under erroneous description given in assessment rolls, or lands that may have been duly assessed and taxes paid on one assessment, or lands which may have been assessed and taxes paid thereon in a county other than the one in which they are located, or lands which may have been sold to the State and upon which taxes have been paid and through error not credited in the assessment rolls, shall not be deemed subject to the provisions of this chapter. When called upon, the Land Commissioner shall furnish the county judge of any county compiling its own delinquent tax record with such information as may enable him to determine the validity or locality of such surveys and grants as have not been shown by the printed abstracts of the Land Office."

From the opinion of the Court of Civil Appeals in the case of Hill and Johns v. Loftin, 165 S. W. 67, we quote as follows:

"(11) It is further urged that no title passed by the execution sale in Sherman county, because the judgment was rendered and the sale made to pay the 1901 and 1902 state and county taxes, and the taxes for these years had been paid by Colsor in Hansford county. In Mote v. Thompson, 156 S. W. 1101 (writ of error denied by the Supreme Court), we held that the right to file suit for the collection of delinquent taxes and to foreclose a lien upon the property

subject to the taxes, which exist solely
by reason of this special statute, confers
jurisdiction upon the district court, and
without the statute the district court
would have no such jurisdiction. By ex-
press provisions there is removed from the
jurisdiction of the court: '(1) All real
estate which may have been rendered for
taxes and paid under erroneous description
given in assessment rolls; (2) lands that
may have been doubly assessed and taxes
paid on one assessment; (3) lands which
may have been assessed and taxes paid there-
on in a county other than the one in which
they are located.' The purpose of this
statute being to collect delinquent taxes,
the court clearly had no authority to ren-
der a judgment for taxes already paid. This
property had been rendered in 1901 and in
1902 by M. Celsor, and evidence was intro-
duced showing the payment of the taxes in
Hansford county for said years. The judg-
ment was therefore rendered in part for an
amount not delinquent. Mangum v. Kenley,
145 S. W. 316."

The taxes in question having already been paid to
Montague County, under the express provisions of Article
7338, and as held in Hill & Johns v. Loftin, supra, the
court would not have jurisdiction to enter judgment in
favor of Cooke County against the owners of said land for
the amount of such taxes. Our answer to your third ques-
tion therefore is in the negative.

In the event you still desire answers to your first
and second questions kindly advise us definitely whether the
boundary between said two counties had been accurately and
legally surveyed prior to 1928 in such a way as to show this
land was located in Cooke County. Also give us the details
concerning the assessment of this land for taxation in Cooke
County during the years inquired about, as well as the details
concerning the assessment and collection of said taxes in
Montague County. If those facts do not disclose the reason
for the payment of these taxes in Montague County, we should
be glad to be informed upon that point.

2

Yours very truly

ATTORNEY GENERAL OF TEXAS

By  Glenn R. Lewis

Glenn R. Lewis
Assistant

GRL-MR

APPROVED:

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN